**E-FILED on**    7/26/05

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SHANNON KELSEY,<br><br>       Plaintiff,<br><br>   v.<br><br>ALLSTATE INSURANCE COMPANY, and DOES 1 through 100 inclusive,<br><br>       Defendant. | No. C-04-01224 RMW<br><br>ORDER GRANTING IN PART AND DENYING IN PART ALLSTATE'S MOTION FOR SUMMARY JUDGMENT, OVERRULING PLAINTIFF'S OBJECTION TO MAGISTRATE'S ORDER STRIKING PLAINTIFF'S EXPERT, SETTING CASE MANAGEMENT CONFERENCE<br><br>**[Re Docket No. 23, 55]** |

    Plaintiff Shannon Kelsey seeks unpaid benefits under his insurance contract with defendant Allstate Insurance Company ("Allstate") and damages for bad faith. Allstate moves for summary judgment on all claims. The motion was heard May 13, 2005.[1] For the reasons set forth below, the court grants in part and denies in part Allstate's motion for summary judgment.

---

[1] After the hearing, the parties filed several supplemental declarations with the court addressing issues raised for the first time at oral argument and questions raised in the court's tentative order but, according to plaintiff, not addressed at the hearing. Plaintiff is advised that the court's tentative ruling does not generally authorize the parties to engage in additional briefing, whatever the format, without leave of the court.

# I. BACKGROUND

At all relevant times, plaintiff maintained a homeowners insurance policy with Allstate on his residence in San Jose, CA ("the residence"). *See* Mot., Ex. 1, Decl. Glen Davis ("the Policy").[2] The residence was severely damaged in a fire on August 27, 2000. Mot., Ex. 4, Depo. Shannon Kelsey ("Kelsey Depo. I") at 6:6-8. Plaintiff retained a public adjuster, Kip Martin of The Martin Group, to act on his behalf. *Id.* at 43:3-18. Martin worked with his assistant, June McClain, on plaintiff's claim. On August 28, 2000, Allstate assigned its adjuster, Steve Bryan, to plaintiff's case. Mot., Ex. 2, Decl. Steve Bryan ("Bryan Decl.") ¶ 2.

The morning after the fire, plaintiff claims that Bryan arrived at the residence before Martin. Bryan allegedly attempted to dissuade plaintiff from using a public adjuster and urged him to cancel his contract with Martin. Kelsey Decl. ¶ 9. Martin arrived and allegedly warned Bryan that he should not be speaking directly to Martin's client. The discussion apparently escalated into an argument between Martin and Bryan and both adjusters may have yelled at one another at this first meeting. Kelsey Decl. ¶ 9; Martin Depo. at 46:23-47:15. Plaintiff contends that this set the stage for a confrontational claims process with Allstate. Kelsey Decl. ¶ 10.

Plaintiff elected to continue living on the property in an RV with his sons, utilizing the undamaged portions of his house. Through Martin, he initially negotiated a monthly ALE payment in the amount of $3000, Kelsey Depo. I at 11:8-12, 80:5-81:1, the cost of a comparable rental in the neighborhood. After the fire, plaintiff kenneled his dogs at a commercial facility, but after being informed that Allstate would not cover this expense, he ceased kenneling them and kept them on the property instead. Through Martin, he renegotiated his monthly ALE payment to $4250 to reflect the cost of a pet-friendly rental in the neighborhood. Kelsey Depo. I at 11:12-18, 87:2-11. Allstate paid the difference in ALE payment retroactively.

In September 2000, Bryan contacted JCS Construction ("JCS"), a contractor then affiliated with Allstate, to develop an estimate for the cost of repairing the fire damage at plaintiff's residence. JCS

---

[2] The policy provides the following relevant coverage: 1) dwelling protection ("coverage A"); 2) other structures protection ("coverage B"); 3) personal property protection ("coverage C"); 4) additional living expense ("ALE"); 4) debris removal; and 5) trees, shrubs, plants and lawns.

provided a preliminary estimate on October 5, 2000. Bryan Decl. ¶ 4. Meanwhile, Martin arranged for a separate contractor, TM Construction, to prepare a competing estimate. Kelsey Depo. I, 73:10-21, 279:7-280:2.

The fire debris contained asbestos, which had to be abated before repairs to the residence could begin. On October 18, 2000, McClain faxed Bryan an estimate from the asbestos abatement contractor hired by Martin to do the asbestos removal. On October 19, 2000, Bryan issued a check for the estimated amount. The asbestos abatement was completed on October 27, 2000.

On December 7, 2000, JCS Construction re-inspected the residence and provided its final estimate for repairs of $94,852.81. The parties dispute why it took so long to perform the inspection. Allstate contends that it was unable to secure plaintiff's permission and access to the property for inspection until December 7, 2000, while plaintiff asserts that JCS Construction was given the access codes to the property and blanket permission to enter on September 15, 2000. Bryan Decl. ¶ 6; Kelsey Decl. ¶12. After completion of this re-inspection, on December 8, 2000, Bryan issued a check for $88,508.24 representing the actual cash value of the loss to the residence based on the repair estimate submitted by JCS Construction ("ACV settlement"). Bryan Decl., Ex. A. The JCS estimate was eventually revised upward to $112,009.17 based in part on the TM Construction estimate. Bryan Decl. ¶ 8. Bryan issued a check for the additional amount owed for the ACV settlement on April 27, 2001. *Id.*

In March 2001, plaintiff's dogs escaped the yard, allegedly because of an unrepaired fence, and attacked his cat, causing approximately $5,000 in veterinarian bills. Martin submitted an estimate for the repairs to the fence (along with other landscaping repairs) to Allstate in June 2002. Shepardson Decl., Ex. 7.[3]

On June 21, 2001, plaintiff signed the work authorization for his selected contractor, Rintauro Construction, for work on the repairs to his home. Kelsey Depo. at 75:2-12. Rintauro Contruction could not begin work on the house until the smoke damage had been sandblasted from the attic rafters. Depo. Richard Rintauro ("Rintauro Depo.") at 40:1-5. On June 28, 2001, Bryan sent a letter to Martin informing

---

[3] To the extent plaintiff relies upon Allstate's failure to pay for his fence claim as the cause of his cat's vet bills, the court notes that the undisputed evidence establishes that plaintiff submitted the landscaping estimates, including repairs to the fence well after plaintiff's dogs allegedly mauled his cat. The landscaping estimate was dated March 18, 2002 and submitted to Allstate in June 2002.

ORDER GRANTING IN PART AND DENYING IN PART ALLSTATE'S MOTION FOR SUMMARY JUDGMENT—C-04-01224 RMW
MAG                                                                 3

1  him that JCS Construction would be available to do the sandblasting and that Allstate could be billed
2  directly for the work. The letter suggested that Martin contact JCS directly if he wished to utilize their
3  services. Bryan Decl., Ex. B. Martin did not contact JCS, although he maintains that JCS would not have
4  completed the work without hearing directly from Allstate's adjuster because it is a contractor affiliated with
5  Allstate. Martin Decl. at 112:19-25. In a letter dated July 12, 2001, Martin informed Bryan that JCS had
6  not completed the requested sandblasting. Decl. John Shepardson ("Shepardson Decl."), Ex. 5. Eventually,
7  plaintiff hired Golden Gate Construction to do the sandblasting work. Martin faxed an estimate for the
8  work on August 23, 2001, which Allstate paid the following day. Bryan Decl. ¶ 11. The sandblasting
9  work was completed by a different contractor in either August or September 2001. Kelsey Depo. I at
10 122:1-16.

11 On August 2, 2001, Rintauro Construction obtained a building permit from the City of San Jose for
12 repairs on the property. Rintauro Depo. at 44:17-45:8, 48:3-50:18. On September 27, 2001, a building
13 inspection revealed that the loft in the garage needed to be removed or brought up to code. Rintauro
14 Depo. 56:14-24. Construction was delayed while the loft was redesigned and Rintauro Construction
15 prepared a supplemental repair estimate. Kelsey Depo. at 96:8-97:12. Allstate received a code repair
16 estimate from Rintauro Construction on November 29, 2001. Bryan Decl. ¶ 13. Bryan required plaintiff to
17 submit documentation demonstrating what code upgrades were required by the city, which he received on
18 December 17, 2001. *Id.* ¶ 14. That documentation showed that some of the items in the upgrade estimate
19 were not required by the San Jose inspection. *Id.* Once the supplemental repair estimate and the
20 documentation supporting the code upgrade requirements were submitted, Allstate paid it the next day.
21 Bryan Decl. ¶14; *see also* Kelsey Depo. at 96:20-12.

22 It is unclear from the parties' papers and evidence when the repairs were eventually completed.
23 However, plaintiff claims that he suffered, among other damages, medical bills from a fractured foot,
24 allegedly caused by living in the trailer past the 1-year anniversary of the fire, and emotional distress from
25 the stress of dealing with the claims process. On December 19, 2003, plaintiff filed an action for breach of
26 contract, breach of oral contract, and bad faith in Santa Clara Superior Court. Defendant removed the
27
28

ORDER GRANTING IN PART AND DENYING IN PART ALLSTATE'S MOTION FOR SUMMARY JUDGMENT—C-04-01224 RMW
MAG                                                  4

1 action to federal court on the basis of diversity.[4]  Plaintiff's complaints involve three main questions: (1)
2 whether Allstate has paid all benefits owed under the policy, (2) whether Allstate obligated itself to make
3 "additional living expense" ("ALE") payments past the 1-year period provided in the policy, and (3) whether
4 Allstate acted in bad faith in settling plaintiff's claim.  Defendants contend that answer to all three questions
5 based on undisputed facts in the record is "no", entitling them to summary judgment of all of plaintiff's
6 claims.

## II.  ANALYSIS

### A. Objections to plaintiff's evidence[5]

9 Prior to filing the present motion, Allstate moved to strike the expert testimony of two of plaintiff's
10 expert witnesses, Mr. Herndon and Dr. Missett, because plaintiff failed to provide their expert reports prior
11 to the scheduled expert disclosure date.  The discovery motion was referred to Magistrate Judge Lloyd for
12 resolution, who concluded that plaintiff's failure to provide the expert reports was prejudicial to defendant
13 and not excusable.  Pursuant to Federal Rule of Civil Procedure 37, he ordered that plaintiff's expert
14 designation be stricken and that plaintiff be precluded from calling Herndon and Missett as witnesses at
15 trial.

16 On May 10, 2005, plaintiff timely filed an objection to the portion of Judge Lloyd's order striking
17 Herndon's declaration.  In it, plaintiff claims that the judge improperly waived the requirement of a live
18 meet-and-confer prior to defendant's bringing the motion to strike the declaration and failed to
19 appropriately consider the prejudice factors for the admittedly late submission of Herndon's report.

20 Rule 72(a) of the Federal Rules of Civil Procedure allows aggrieved parties to file timely objections
21 to rulings of a magistrate judge in nondispositive matters.  Such objections are sustained only if the
22 magistrate judge's order is "found to be clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a).  The
23 court overrules plaintiff's objection to Magistrate Judge Lloyd's order on the grounds that it is neither clearly

---

[4] The parties entered into arbitration, resulting in an arbitration award being filed on November 11, 2004.  However, plaintiff requested a trial de novo and removal from arbitration on November 18, 2004.

[5] Allstate separately submitted objections to practically every aspect of the evidence submitted by plaintiff.  As a significant number of the items Allstate seeks to strike are irrelevant to the court's determination of this motion, the court will address Allstate's objections as necessary within the context of any discussion to which they may be pertinent.

ORDER GRANTING IN PART AND DENYING IN PART ALLSTATE'S MOTION FOR SUMMARY JUDGMENT—C-04-01224 RMW
MAG                                                                                 5

erroneous nor contrary to law. Accordingly, the court declines to consider the testimony of either precluded expert for purposes of this motion. Fed. R. Civ. P. 37.

### B. Breach of Contract[6]

Plaintiff asserts that Allstate has breached the terms of the insurance policy by failing to pay a number of covered benefits. These are 1) additional living expenses, 2) kenneling his dogs, 3) storage costs, 4) landscaping costs, in particular, costs to repair his fence, and 5) claims for items destroyed in the fire ("contents claim").

The court begins by examining the language of the insurance policy. As the fundamental goal of contractual interpretation is to give effect to the parties' mutual intent, "clear and explicit" contractual language governs. There is no room for judicially-created rules unrelated to policy language. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992); Cal. Civ. Code §§ 1636, 1638.

#### 1. Additional Living Expenses

Plaintiff's policy sets forth the following ALE provision:

> a) We will pay the reasonable increase in your living expenses necessary to maintain your normal standard of living when a direct physical cost we cover makes your residence premises uninhabitable.
>
> Payment for covered additional living expense will be limited to the least of the following:
>
> 1) the time period required to repair or replace the property we cover, using due diligence and dispatch; or
> 2) if you permanently relocate, the shortest time for your household to settle elsewhere;
> 3) 12 months.

---

[6] As an initial matter, plaintiff contends that Allstate has admitted it owed the benefits plaintiff claims it has failed to pay. He argues that its failure to deny plaintiff's allegations in its responses to letters asserting entitlement to certain benefits. Plaintiff's reliance on *United States v. Monks*, 774 F.3d 945 (9th Cir. 1985), is misplaced. *Monks* refers to an evidentiary exception that permits otherwise hearsay statements into evidence when the statement can be construed as an admission against interest. *Monks* does not create a substantive admission upon a person's failure to deny accusatory statements in a demand letter that are not rebutted.

ORDER GRANTING IN PART AND DENYING IN PART ALLSTATE'S MOTION FOR SUMMARY JUDGMENT—C-04-01224 RMW
MAG                                                                 6

1   Policy at 12.  The parties do not dispute that plaintiff's loss entitled him to receive ALE payments — their

2   dispute is over how many months of ALE benefits plaintiff should have received.  The contract language is

3   clear that the additional living expense coverage is limited to a maximum of 12 months.[7]

4          In his written opposition, plaintiff argues that Allstate's employees have "admitted" that additional

5   ALE payments were owed him.  However, where a policy provision has a "plain meaning," it is immaterial

6   that the insurer's agents, employees or other representatives have misinterpreted that meaning: "(O)pinion

7   evidence is completely inadmissible to interpret an insurance contract." *Chatton v. National Union Fire*

8   *Ins. Co.*, 10 Cal. App. 4th 846, 865 (1992) (claims adjusters admitted coverage of claim that policy did

9   not cover); *Prudential Ins. Co. of America, Inc. v. Superior Court*, 98 Cal. App. 4th 585, 603 (2002)

10  (immaterial that insurer's employees admitted having provided coverage to other claimants with similar

11  claims).  Thus, the court does not consider the purported admissions of Allstate's employees and adjusters

12  relevant to interpretation of the policy.

13         **a.    Coverage under the policy**

14         The parties do not dispute that Allstate paid plaintiff $4,250 per month for the period of August 27,

15  2000 through August 28, 2001.  Kelsey Depo. at 11:8-18 (agreeing that he received 12 months of ALE

16  benefits at $4,250 per month).  Nevertheless, plaintiff contends that Allstate owes 6 additional months of

17  ALE payments, which remain unpaid.

18         Because the policy clearly limits the ALE payments to a maximum of 12 months, absent

19  modification, Allstate has fulfilled its obligations under plain terms of the ALE provision.  However, for the

20  first time at oral argument, plaintiff contends that the written terms of the policy expressly provide for

21  Allstate's broadening of coverage without charge.[8]  The insurance policy states:

22  > When Allstate broadens the coverage during the premium period without
    > charge, you have the new features if you have the coverage to which they
23  > apply.  Otherwise, the policy can be changed only by endorsement.

---

[7] There is also generally no duty to provide other or additional coverages beyond those provided in the policy. *Gibson v. Government Employees Ins. Co.*, 162 Cal. App. 3d 441, 450 (1984); *see also Shultz Steel Co. v. Hartford Acc. & Indem. Co.* 187 Cal. App. 3d 513, 524 (1986).

[8] At the hearing, defendant, presumably hearing this argument for the first time, asserted that the statements plaintiff contends extended ALE benefit coverage were made outside of plaintiff's premium period.  However, plaintiff demonstrated subsequent to the hearing that the Policy was still in effect.  Supp. Decl. Shepardson Opp'n Summ. J. ¶ 4, Ex. 1.

1  Policy at 4. Plaintiff argues that this clause permits oral modification of the contract and expressly entitles
2  insureds to any type of broadened coverage Allstate provides without charge during the premium period.
3  Defendant, on the other hand, argues that the clause which provides that, if Allstate issues a new policy
4  form broadening coverage, entitles the insured to the broadened coverage provided by the new form but
5  does not permit oral expansion of a policy's terms, rather it "explains the effect of an otherwise valid
6  modification to the written insurance contract." Allstate's Resp. to Supp. Decl. Shepardson Opp. Summ. J.
7  at 2.

8  The court does not agree with defendant's position that the language necessarily requires that
9  Allstate issue a new written policy form for the broadened coverage to take effect. However, the language
10 cannot be read as plaintiff suggests: to permit an extension to applicable time limits of existing individual
11 coverage. The clause provides that if Allstate broadens coverage, the insured will have the *new features* if
12 the insured's policy includes the coverage to which such features apply. The oral extension of ALE benefits
13 does not constitute a new feature to ALE coverage, rather a temporal continuation of an existing benefit that
14 remains otherwise unchanged.

### b.  Dog kenneling

16 Plaintiff contends that although Allstate paid for 12 months of ALE benefits, the amount it paid was
17 not enough to fulfill the policy terms. Specifically, plaintiff asserts that Allstate failed to pay the "reasonable
18 increase in living expenses necessary to maintain" plaintiff's "normal standard of living" because it did not
19 pay for kenneling plaintiff's dogs. As set forth above, Allstate adjusted its ALE payment from $3,000 per
20 month to $4,250 per month to accommodate for the cost of a rental property that would accept plaintiff's
21 pets. Plaintiff agreed to this adjustment and continued to live on the property with his animals. Plaintiff
22 does not point out, nor can the court locate, another provision under which plaintiff could reasonably
23 contend that he was owed payment for kenneling his dogs. Thus, the court concludes that plaintiff's claims
24 fail to the extent they are based on Allstate's failure to pay for the costs of kenneling.

### c.  ALE coverage for damage caused by unsecured tarp

26 Plaintiff next argues that ALE coverage under the policy was triggered for a second time when a
27 tarp that was covering part of the damaged roof flew off during a rainstorm on March 29, 2001, causing
28 further damage to the property. Plaintiff has submitted no admissible evidence whatsoever that this damage

occurred or that a claim was made for such damage. Accordingly, this purported incident does not trigger a second round of ALE benefits and cannot serve as a basis for plaintiff's claim for breach of the insurance policy.[9]

### 2. Failure to pay storage charges

Plaintiff contends that Allstate failed to pay storage charges for his personal property after the fire. Plaintiff's personal property was stored at a rate of $800 per month and storage coverage was provided under the ALE benefit. It is undisputed that Allstate paid storage charges of $32,000, well over $800 per month for the 12 months of ALE. Kelsey Decl. ¶ 16. Nevertheless, plaintiff contends that the actual value of storage after the fire was $45,000, presenting no evidence aside from his own declaration in support of this amount. Allstate contends that the additional storage charges plaintiff claims arose after the expiration of plaintiff's ALE benefits. Plaintiff does not dispute that the amount claimed is for storage charges incurred after the expiration of ALE benefits under the policy, but contends that the ALE coverage was not the appropriate policy term under which Allstate should have provided coverage for storage costs.

Aside from the stricken declaration of plaintiff's insurance expert, Herndon, plaintiff provides no evidence that other provisions of the policy apply.[10] Therefore, based on the evidence before it, the court must conclude that Allstate was under no obligation to pay the storage costs in excess of 12 months under the written terms of the policy.[11]

---

[9] Following the hearing, plaintiff confirmed that no claim regarding the tarp was made. He nevertheless repeats his assertion that he is entitled to ALE benefits based upon the unconfirmed and unclaimed damage caused by this incident. He contends that he made an implicit claim because he continued to request ALE benefits and, under California Insurance Regulation 2695.4, Allstate would have been obligated to disclose that he was owed ALE benefits had it actually known about the incident. This argument is without merit.

[10] In fact, Herndon's expert report itself is relatively conclusory on the matter, stating generally that "Charges for storage of contents off site is a benefit available to the insured under either the 'Contents' coverage since it involves contents or under the 'Dwelling' coverage since the contents have to be out of the home for repairs to be made." Herndon Report ¶ 31. He does, however, state, without identifying his basis for the statement, that Allstate paid the costs of removing the contents from the house and returning them to the house under the "Contents" coverage. *Id.* ¶ 29

[11] As set forth below, however, there remains a question of fact as to whether storage charges were owed pursuant to the alleged verbal extension of ALE payments by Bryan.

ORDER GRANTING IN PART AND DENYING IN PART ALLSTATE'S MOTION FOR SUMMARY JUDGMENT—C-04-01224 RMW
MAG                                                                                                    9

### 3. "Lowballing" plaintiff's landscaping and contents claims

Plaintiff submitted a claim for $7,920.80 in landscaping damages. Shepardson Decl., Ex. 7. Allstate allegedly only paid $1,165.55 on this claim. The undisputed evidence demonstrates that plaintiff's public adjuster, the Martin Group, settled this claim. Therefore plaintiff's contention that Allstate failed to pay for landscaping losses is unsupported.

Plaintiff, although admitting that Allstate paid his claim for damage to the contents of his home ("contents claim"), appears to also contend that Allstate "lowballed" him as to the amount he was due. Plaintiff presents no evidence that this is the case, except deposition transcripts from Martin and McClain asserting that Allstate routinely undervalues claims. However, Martin stated in conjunction with his testimony that his complaints about Allstate had nothing to do with plaintiff's claims. Martin Depo. at 138:14-18 ("They're the most unfair, unethical insurer I can think of. And that has nothing to [do] with Shannon Kelsey, because that's just the way it is"). The point is otherwise unsupported. "Where a point is merely asserted by counsel without any argument of or authority for its proposition, it is deemed to be without foundation and requires no discussion." *People v. Ham*, 7 Cal. App. 3d 768, 783 (1970), *disapproved on other grounds, People v. Compton*, 6 Cal. 3d 55, 60, n.3 (1971). The court finds plaintiff's evidence insufficient to create an issue of triable fact as to Allstate's failure to pay or whether it "lowballed" plaintiff.[12]

### C. Breach of oral agreement to extend ALE benefits

The parties do not dispute that Bryan told plaintiff both personally and through Martin that he would seek an extension from Allstate of plaintiff's ALE benefits for 3 months. Plaintiff claims that Bryan's verbal representation that he would ask Allstate to pay for ALE benefits in excess of the 12-month ALE period provided under the terms of the written insurance policy created an oral contract with Allstate for additional

---

[12] With regard to the contents claim, Allstate also contends that, because the claim was settled on May 17, 2001 and plaintiff was informed via letter to the adjuster that a 1-year statute of limitations applied to challenging the claim, plaintiff's contents claim is time-barred. Plaintiff presents numerous arguments as to why the claim is not time-barred. At this point, however, the court need not consider this claim, as it has determined that the contents claim can neither be the basis for a breach of contract claim (as it was paid) or a bad faith claim ("lowballing" claim is unsupported by evidence).

benefits under the policy.[13] He now claims that he is entitled to 6 additional months of ALE benefits, a claim which appears to have arisen in July 2003, when plaintiff's counsel sent a letter dated July 7, 2003 to Aileen Reyes-Lee at Allstate demanding 6 months further ALE payments. Shepardson Decl., Ex. 14. Allstate, on the other hand, contends no oral contract would have been formed because there was no consideration sufficient to support such a contract. According to Allstate, then, it owes no ALE payments or storage costs beyond the 12-month ALE coverage period set forth in the written policy resulting from an oral agreement.

Consideration is required for a legally enforceable contract. *See Coe v. Farmers New World Life Ins. Co.*, 209 Cal. App. 3d 600, 604 (1989). Consideration is defined as "a benefit conferred or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor." Cal. Civ. Code § 1605. Plaintiff suffered no additional legal detriment in exchange for Allstate's promise to extend his ALE benefits for three months: any delays in construction were well established as of the time the ALE benefits expired and there is no evidence that plaintiff experienced additional detriment in exchange for the extension. The parties do not dispute that Allstate obtained no additional benefit from any alleged promise by Allstate to extend ALE benefits past the policy period. Thus, there appears in the record no evidence of consideration sufficient to support the existence of a separate oral contract.

However, promissory estoppel, i.e., detrimental reliance on a promise, can be a substitute for the consideration required as an element of an enforceable contract. *Signal Hill Aviation Co. v. Stroppe*, 96 Cal. App. 3d 627, 640 (1979). There is some evidence that Allstate's issuance of the settlement check for the structural repairs in December 2000 may have caused some delay in construction. Allstate submitted a letter from Bryan to Martin dated February 11, 2002 stating that he would make a request to extend ALE

---

[13] An oral promise may, under certain conditions, serve to modify a written contract. California Civil Code section 1698 permits parties to a written contract to modify the contract by (1) an oral modification that is fully executed by both parties; or (2) an unexecuted oral modification provided there is both new consideration for the modification and an absence of any provisions in the original contract precluding an oral modification. Cal. Civ. Code, § 1698(a)-(c). There is little dispute that the oral modification is unexecuted by Allstate – after all, its failure to pay ALE benefits past the 12 month period is at issue. Thus, for modification of the written contract to be valid, the court must find both that the contract does not preclude oral modification and there is new consideration for the modification. *Id.* § 1698(c).

ORDER GRANTING IN PART AND DENYING IN PART ALLSTATE'S MOTION FOR SUMMARY JUDGMENT—C-04-01224 RMW
MAG                                11

benefits for 3 months to accommodate for the fact that the settlement check was issued on December 8, 2000 for a loss that occurred on August 27, 2000. However, most of the evidence that Allstate or Bryan promised to extend ALE benefits past the 12-month cutoff post-dates the expiration of the ALE benefit. The evidence on record demonstrates that plaintiff did not personally have a conversation with Bryan regarding the extension of benefits until January 17, 2002, which was after the period of extension had expired. Kelsey Decl. ¶ 4. The earliest evidence that plaintiff asserted any rights under this oral agreement is dated October 18, 2001: a fax coversheet sent to Laurie Jackson at Allstate on which June McClain apparently wrote "Also, Mr. Kelsey is Due ALE Payments Believe from May through October at $4250 per Mo." Shepardson Decl., Ex. 3. Bryan's written notes produced by Allstate indicate that he may have agreed in December 2000 and again in January 2001 to extend benefits for an additional 3 months. Shepardson Decl., Ex. 14 at AS000476 ("I extended A.L.E. on 12/5/00, 1/29/01 + 10/26/01").[14] These notes are sufficient to create a material issue of fact as to whether plaintiff may have detrimentally relied in delaying authorizing repair work on his fire-damaged home upon a promise to extend ALE benefits made before the ALE benefits under the written policy expired.[15]

Accordingly, the court concludes that, viewed in the light most favorable to the plaintiff, sufficient evidence exists to support plaintiff's claim that an oral contract for an additional 3 months of ALE payments may exist. Therefore, defendant's motion for summary judgment on plaintiff's oral contract claim is denied.

**D.    Bad Faith**

   **1.    Insurance Code § 790.03**

The California Supreme Court has held that California Insurance Code § 790.03 confers no private right of action for damages. *Moradi-Shalal v. Fireman's Fund Ins. Companies*, 46 Cal. 3d 287, 205 (1988). Therefore, any claim for damages under this section, punitive or otherwise, fails as a matter of law.

---

[14]    Allstate objects to Exhibit 13 as unauthenticated because it is attached only to plaintiff's counsel's declaration, who has no personal knowledge regarding its creation. The document was, however, produced by Allstate to plaintiff and then presumably given to plaintiff's counsel.

[15]    Allstate also contends that plaintiff did not incur any expenses during the period after the ALE coverage expired because he was living rent-free in a tent trailer on his own property. While plaintiff may not have been incurring $4250 per month to live on the property, this is the ALE arrangement to which Allstate had previously agreed, therefore the existence of an oral agreement for an extension of ALE benefits may have entitled plaintiff to a comparable amount.

### 2. Covenant of good faith and fair dealing

An insurance policy is a contract to provide certain benefits enumerated in the policy terms. "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 683 (1988). This principle applies equally to insurance policies. *Kransco v. American Empire Surplus Lines Ins. Co.*, 23 Cal. 4th 390, 400 (2000).

The implied covenant of good faith and fair dealing supplements express contractual covenants, "to prevent the contracting party from engaging in conduct that frustrates the other party's rights to benefits of the agreement." *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 36 (1995). "Absent that contractual right, however, the implied covenant has nothing upon which to act as a supplement and 'should not be endowed with an existence independent of the contractual underpinnings.'" *Id.* (citing *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1153 (1990)).

An insurer's breach of the implied covenant of good faith and fair dealing gives rise to both contract and tort remedies, including emotional distress and punitive damages. *Silberg v. California Life Ins. Co.*, 11 Cal. 3d 452, 462 (1974); *Gruenberg v. Aetna Ins. Co.*, 9 Cal. 3d 566, 574 (1973). If, however, the insured suffers no financial loss, no bad faith claim can be maintained solely for emotional distress resulting from the insurer's delay or other mishandling of the claim.[16] *Continental Ins. Co. v. Superior Court*, 37 Cal. App. 4th 69, 86 (1995); *Waters v. United Services Auto. Ass'n*, 41 Cal. App. 4th 1063, 1079 (1996).

To establish a breach of the implied covenant of good faith and fair dealing under California law, a plaintiff must show: "(1) benefits due under the policy were withheld; and (2) the reason for withholding benefits was unreasonable or without proper cause." *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 (1990). As set forth above, all benefits claimed by plaintiff under the written insurance policy were paid. There does, however, remain a question of fact as to whether there is an oral contract for benefits under which there may have been a denial of coverage. If the jury concludes that Allstate's adjuster agreed

---

[16] The reason is that, California law, an action for bad faith "is an action for the interference with property rights, not personal injury [and] damages for emotional distress are compensable as incidental damages flowing from the initial breach, not as a separate cause of action." *Gourley v. State Farm Mut. Auto. Ins. Co.*, 53 Cal. 3d 121, 128 (1991).

ORDER GRANTING IN PART AND DENYING IN PART ALLSTATE'S MOTION FOR SUMMARY JUDGMENT—C-04-01224 RMW
MAG                                                                                      13

1    to extend the ALE payments then Allstate knowingly reneged on the promise, plaintiff may have a basis on
2    which a bad faith claim could be premised.

3    The court next determines whether Allstate acted reasonably with regard to handling the benefits
4    paid under the policy. The Ninth Circuit has stated that "[t]he key to a bad faith claim is whether or not the
5    insurer's denial of coverage was reasonable." *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (2001);
6    *see also Aceves v. Allstate Ins. Co.*, 68 F.3d 1160, 1166 (9th Cir. 1995) (emphasizing that the sole
7    inquiry under bad faith claim is whether the insurer acted reasonably). Whether a delay in paying an
8    insurance claim is an "unreasonable" delay is a question of fact. *Paulfrey v. Blue Chip Stamps,* 150 Cal.
9    App. 3d 187, 194 (1983). "While the reasonableness of an insurer's claims-handling conduct is ordinarily a
10   question of fact, it becomes a question of law where the evidence is undisputed and only one reasonable
11   inference can be drawn from the evidence." *Chateau Chamberay Homeowners Ass'n v. Associated*
12   *Intern. Ins. Co.*, 90 Cal. App. 4th 335, 346 (2001); *Nager v. Allstate Ins. Co.*, 83 Cal. App. 4th 284,
13   288 (2000) ("The reasonableness of an insurer's claims handling conduct in a first party coverage case
14   becomes a question of law, properly determined on summary judgment, where the evidence is undisputed
15   and but one inference can be drawn.").

16   The undisputed evidence establishes that plaintiff did not sign a work order for its chosen
17   contractor, Rintauro Construction, until June 2001. Rintauro Construction did not secure a building permit
18   until August 2001. Plaintiff asserts that this delay was caused by Allstate and that Allstate engaged in bad
19   faith by unreasonably delaying the payment of his insurance benefits and otherwise causing delays that
20   impacted the completion date of the repairs to his residence. First, plaintiff asserts that Allstate delayed
21   paying the initial ACV settlement for damage to his residence until December 8, 2000, three months after
22   the loss occurred in late August 2000. Plaintiff's independent estimate was completed on October 9, 2000.
23   JCS's estimate was completed on October 5, 2000. Allstate contends that it took several months to secure
24   plaintiff's permission to enter the premises for the final inspection but that it paid the ACV claim immediately
25   following that final inspection. Plaintiff's declaration, however, asserts that he provided JCS with the access
26   codes and blanket permission to enter the premises. There appears to remain an issue of fact as to whether
27   Allstate had access to the home to complete the final inspection prior to December 2000. Therefore, the
28

ORDER GRANTING IN PART AND DENYING IN PART ALLSTATE'S MOTION FOR SUMMARY JUDGMENT—C-04-01224 RMW
MAG                                                                14

1 court cannot conclude as a matter of law that the 3-month delay in settling the contents claim was
2 necessarily reasonable.

3       Plaintiff also contends that Allstate's failure to arrange for JCS to sandblast the rafters constituted an
4 undue delay in bad faith. On June 28, 2001, Bryan sent a letter to Martin directing Martin to contact JCS
5 directly to arrange any sandblasting. Opp'n Summ. J. Ex. 4 ("JCS is available to complete the sand blasting
6 of the attic framing, should Mr. Kelsey wish to proceed in this manner. Please contact they [sic] directly . .
7 . to arrange the work and they can bill Allstate directly for the sandblasting."). Plaintiff does not allege that
8 he contacted JCS to arrange the sandblasting. Nor has he countered with evidence sufficient to create a
9 triable issue of fact as to whether Allstate or its agents agreed to set up that service. Absent any showing
10 by plaintiff that Allstate had undertaken (or was under a duty to undertake) arranging sandblasting on
11 plaintiff's behalf, the court determines that no reasonable jury would conclude that the delay in repairing
12 plaintiff's residence was caused by Allstate's actions or affiliation with JCS. Allstate paid the sandblasting
13 estimate the day after it received it from Golden Gate Construction, thus the undisputed facts establish that
14 there was no delay caused by Allstate in paying the claimed benefit.

15       Plaintiff also contends that Allstate unreasonably delayed in paying for the increased project costs
16 due to conforming his repair plans to the building code. Plaintiff agrees, however, that these costs were
17 ultimately paid. Kelsey Depo. at 13:13-25. Rintauro Construction alerted Allstate to the problem in
18 November 2001 and submitted a cost estimate for the code upgrade repairs in late January 2002. *Id.* at
19 97:5-7. Allstate paid the additional cost in February 2002. *Id.* at 97:11-12. However, he seems to argue
20 that Allstate should have recognized the code upgrade problems at the time of the original estimates. *Id.* at
21 92:13-98:5. There appears to be nothing in the policy that supports plaintiff's interpretation that Allstate
22 should have prospectively identified the code problems and paid amounts prior to receiving an estimate

23
24
25
26
27
28

ORDER GRANTING IN PART AND DENYING IN PART ALLSTATE'S MOTION FOR SUMMARY JUDGMENT—C-04-01224 RMW
MAG                                    15

from plaintiff's contractor.[17] Thus, no reasonable jury could find that Allstate's handling of the code upgrade costs claim was unreasonable.

Finally, as set forth above, plaintiff contends that Allstate promised to extend ALE benefits for an additional amount of time but now refuses to pay such additional benefits. The undisputed evidence establishes that Allstate was aware that Bryan may have told plaintiff that the ALE benefits would be continued past the 12-month period, and, of course, it is undisputed that Allstate is refusing to pay ALE benefits beyond the 12-month policy limit.

In summary, plaintiff has adduced some evidence that Allstate may have reneged on a promise to extend ALE payments, and Allstate's failure to pay ACV benefits until three months after the loss may have resulted in the delay in plaintiff bringing on a contractor and securing the requisite building permits. Thus, plaintiff's bad faith claim survives defendant's motion for summary judgment.

### E. Punitive Damages

California Civil Code provides for punitive damages if an "officer, director, or managing agent of the corporation" participates in or ratifies the "oppression, fraud, or malice." Cal. Civ. Code § 3294(b). A standard of "clear and convincing evidence" is required to prove that the defendant is guilty of the act. *Id.* at § 3294(a).

For the purpose of determining punitive damages, "managing agents" are defined as "those corporate employees who exercise substantial independent authority and judgment in their corporate decisionmaking so that their decisions *ultimately determine corporate policy*." *White v. Ultramar, Inc.*, 21 Cal. 4th 563, 566-67 (1999) (emphasis added); *see Cruz v. HomeBase*, 83 Cal. App. 4th 160, 167 (2000).

---

[17] The relevant policy provision reads:

> We will pay up to 10% of the amount of insurance shown on the Policy Declarations under Coverage A — Dwelling Protection to comply with local building codes after a covered loss to the dwelling and when repair or replacement results [in] increased costs due to the enforcement of building codes, ordinanances [sic] or laws regulating the construction, reconstruction, maintenance, repair or demolition of the dwelling.

Policy at 14.

ORDER GRANTING IN PART AND DENYING IN PART ALLSTATE'S MOTION FOR SUMMARY JUDGMENT—C-04-01224 RMW
MAG 16

1    It is undisputed that the adjuster and Allstate employees involved in plaintiff's claim were not officers or directors.  Plaintiff contends, however, that these employees and adjusters such as Bryan are "managing agents" pursuant to the statute.  It is important to define managing agents as those individuals who "guide corporate conduct" so as to avoid "punishing the corporation for malice of low-level employees which does not reflect the corporate state of mind or the intentions of corporate leaders." *Id.* (quotations omitted).  *Egan v. Mutual Omaha Ins.*, 24 Cal. 3d 809 (1979), held that the title is not the key to determining whether a person is a managing agent, but rather "the degree of discretion the employees possess in making decisions that will ultimately determine corporate policy." *Id.* at 822-23.  The legislative intent of Congress in the addition of amendments to Section 3294 should also be considered.  *White* stated that these amendments to Section 3294 were intended to ensure that "[i]n order to demonstrate that an employee is a true managing agent under Section 3294, subdivision (b), a plaintiff seeking punitive damages would have to show that the employee exercised substantial discretionary authority over significant aspects of a corporation's business." *White*, 21 Cal. 4th at 566-67.

Whether an employee is a managing agent hinges on the amount of discretion granted to that employee by the company.  *Egan*, 24 Cal. 3d at 822-23.  The *White* court found that Salla, the manager who fired the plaintiff, was a managing agent whose actions could be used as the basis for a punitive damages claim against Ultramar.  *Id.* at 583-84.  Salla managed eight stores for Ultramar and was in charge of at least sixty-five employees.  *Id.* at 577.  Additionally, "[t]he individual store managers reported to [Salla], and Salla reported to department heads in the corporation's retail management department." *Id.*

By contrast, in *Cruz v. Homebase*, 83 Cal. App. 4th 160 (2000), the manager in question "was not a manager of numerous stores, but only a supervisor subordinate to the store manager in a single outlet of a multi-store chain." *Id.* at 440.  He managed only a few employees and his authority was limited solely to the area of security in the corporation.  *Id.*  The court stated that the defendant's "decisions could have significant consequences, as the present case shows.  But, then, every corporate employee's reckless or malicious conduct has the potential to cause serious injury." *Id.*  The court determined that the defendant was not a managing agent for HomeBase.  *Id.*  Cases preceding the 1980 and 1988 amendments to Section 3294, like *White* and *Cruz,* limit who may be considered a managing agent for the purpose of determining punitive damages. *White*, 21 Cal. 4th at 576-77.

ORDER GRANTING IN PART AND DENYING IN PART ALLSTATE'S MOTION FOR SUMMARY JUDGMENT—C-04-01224 RMW
MAG                                  17

1  Here, plaintiff bases his punitive damages claim exclusively on the actions of Allstate's claims adjustor, Bryan. Assuming for the moment that plaintiff has met his burden of demonstrating that Bryan acted with "fraud, oppression, and malice," he must also demonstrate that Bryan is Allstate's managing agent, and therefore Allstate should be liable to plaintiff for punitive damages resulting from Bryan's actions. However, plaintiff has not presented sufficient evidence that Bryan, or any of the various contacts within Allstate, possessed the authority to handle claims that would allow him to meet the *Egan's* standard. California courts have held that an individual is not a managing agent if there is no evidence presented that they were "engaged in policy making" for the corporation. *Kelly-Zurian v. Wohl Shoe Co.*, 22 Cal. App. 4th 397, 422 (1994). While plaintiff has offered evidence that Allstate had granted Bryan authority to approve claims up to $150,000, Bryan Decl. at 164:8-9, this does not represent "substantial discretionary authority over decisions that ultimately determine corporate policy." *See Siva v. General Tire & Rubber Co.*, 146 Cal. App. 3d 152, 159 (1983) ("There was no evidence presented that the operators had the discretion to exceed General's written standards for repairs of this nature and accordingly the jury could not have found they were acting in a managerial capacity.").

It does not appear that Bryan is an adjustor who has "ultimate supervisory control and decisional authority regarding the disposition of all claims" that are processed through a particular claims office as did the defendant in *Egan*. 24 Cal. 3d at 823. Plaintiff does not present any evidence that Mr. Bryan disposes of claims "with little if any supervision" or that he possesses discretion resulting in "the ad hoc formulation of policy." *Id.* Bryan's role is similar to the manager in *Cruz* who had limited managerial duties, as opposed to the manager in *White*, who had the ability to significantly shape corporate policy through his control of eight different stores. It is clear from the evidence that Bryan does not possess the degree of discretion required to permit Allstate to be held accountable for punitive damages resulting from the actions of a claims adjustor.

Plaintiff also fails to provide evidence, other than his own conclusions, that the actions of any employee or agent were ratified by Allstate. The court concludes that, even assuming plaintiff could establish the requisite "oppression, fraud, or malice,"  the undisputed facts establish that no officer, director, or managing agent is responsible for any act plaintiff contends forms the basis of his punitive damages complaint.

### III.  ORDER

For the foregoing reasons, the court grants Allstate's motion for summary judgment on plaintiff's breach of contract and punitive damages claims.  Allstate's motion is denied as to plaintiff's claim for breach of oral contract and bad faith.  The parties shall appear on September 2, 2005 at 10:30 for a case management conference for resetting a trial date.  The parties shall submit a joint case management statement five days in advance of the case management conference.

DATED:    7/26/05                                /s/ Ronald M. Whyte
                                                 RONALD M. WHYTE
                                                 United States District Judge

1  **Notice of this document has been electronically sent to:**

2  **Counsel for Plaintiff:**

3  John A. Shepardson        johnshepardson@hotmail.com

4  **Counsel for Defendant(s):**

5  Michael A. Barnes         mbarnes@sonnenschein.com
   Jessica Lou Woelfel       jwoelfel@sonnenschein.com
6

7  Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

8

9

10

11  **Dated:**       7/26/05                               /s/ MAG
                                                  **Chambers of Judge Whyte**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING IN PART AND DENYING IN PART ALLSTATE'S MOTION FOR SUMMARY JUDGMENT—C-04-01224 RMW
MAG                                20